

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

---

*Robert I. Goldaris*  *Mailing Address:*  *Office Location:*  DIRECT: 410-209-4831
*Assistant United States Attorney*  *36 S. Charles Street, 4th Floor*  *36 S. Charles Street, 4th Floor*  MAIN: 410-209-4800
*Robert.Goldaris@usdoj.gov*  *Baltimore, MD 21201*  *Baltimore, MD 21201*

March 26, 2025

Honorable Julie R. Rubin
United States District Judge
District of Maryland
Baltimore, Maryland 21201

      Re:    <u>United States v. Owen Jarboe</u>,
              Criminal No. JRR-24-0023

Dear Judge Rubin:

      In light of the Defendant's decision to plead guilty to the Indictment without the benefit of a plea agreement, this letter sets forth the maximum statutory penalties of incarceration, fines and terms of supervised release for each count to which the Defendant seeks to plead guilty. The Defendant and Government have agreed upon the attached statement of facts for use during the Court's Rule 11 colloquy:

<u>Offenses of Conviction</u>

      1.    The Government believes the Defendant will plead guilty to Counts 1-6 of the Superseding Indictment, which charges the Defendant in Count One with Conspiracy, in violation of 18 U.S.C. § 371; in Count Two with Cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B); in Counts Three and Five with Threat to Damage or Destroy by Means of Fire or Explosive, in violation of 18 U.S.C. § 844(e); and in Counts Four and Six with Threat in Interstate Communication, in violation of 18 U.S.C. § 875(c). The Government believes the Defendant will admit that he is, in fact, guilty of the offenses and will so advise the Court.

<u>Elements of the Offenses</u>

      2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

        a.  <u>Count One; Conspiracy, (18 U.S.C. § 371)</u>
      That on or about the time alleged in the Superseding Indictment, in the District of Maryland and elsewhere,
           i. Two or more persons entered into an unlawful agreement to commit a violation of United States law, as charged in the Superseding Indictment;

      ii. The Defendant knowingly and willfully became a member of the conspiracy; and

     iii. The Defendant or a co-conspirator committed at least one overt act in furtherance of the conspiracy.

b. <u>Count Two; Cyberstalking, (18 U.S.C. § 2261A(2)(B))</u>

That on or about the time alleged in the Superseding Indictment, in the District of Maryland and elsewhere,

      i. The defendant used and caused to be used an interactive computer service or an electronic communication service or an electronic communication system, or any other facility of interstate commerce, as charged in the Superseding Indictment;

     ii. The defendant engaged in a course of conduct with the intent to kill, injure, harass, intimidate, or cause substantial emotional distress to another person or a member of another person's immediate family or spouse or intimate partner; or to place another person in reasonable fear of the death of or serious injury to himself or a member of his immediate family or his spouse or intimate partner; and

     iii. That as a result of that course of conduct, a person was placed in reasonable fear of the death of or serious injury to himself or a member of his immediate family or his spouse or intimate partner, or the person, a member of his immediate family, or his spouse or intimate partner experienced substantial emotional distress.

c. <u>Counts Three and Five; Threat to Damage or Destroy by Fire or Explosive (18 U.S.C. § 844(e))</u>

That on or about the time alleged in the Indictment, in the District of Maryland and elsewhere, the Defendant

      i. That the defendant made, or caused to be made, a threat to unlawfully damage or destroy a building by means of fire; or maliciously conveyed false information which he knew to be false concerning an attempt or alleged attempt being made or to be made to unlawfully damage or destroy a building by means of fire or explosive;

     ii. That the defendant used, or caused to be used, an instrument of commerce, such as a telephone, to communicate the threat or to maliciously covey the false information; and

     iii. That the defendant acted knowingly and willfully.

d. <u>Counts Four and Six: Threats Transmitted by Interstate Communication (18 U.S.C. § 875(c))</u>

That on or about the time alleged in the Indictment, in the District of Maryland and elsewhere, the Defendant

      i. The defendant threatened to injure the person of another, as charged in the Superseding Indictment;

     ii. The threat was transmitted in interstate (or foreign) commerce; and

     iii. The defendant transmitted the threat knowingly and intentionally.

Penalties

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 371 | N/A | 5 years | 3 years max | $250,000 | $100 |
| 2 | 18 U.S.C. § 2261A(2)(B) | N/A | 5 years | 3 years max | $250,000 | $100 |
| 3 and 5 | 18 U.S.C. § 844(e) | N/A | 10 years | 3 years max | $250,000 | $100 |
| 4 and 6 | 18 U.S.C. § 875(c) | N/A | 5 years | 3 years max | $250,000 | $100 |

      a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

      b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

      c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

      d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

      e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

      f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant

agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Government submits that by pleading guilty, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his not guilty plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

  5. The Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. Further, the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

  6. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

  7. If the Defendant wishes to argue for any factor that could move the sentence outside of the advisory guidelines range, he should notify the Court, the United States Probation Officer and government counsel at least 14 days in advance of sentencing of the facts or issues he intends to raise, unless the Court orders otherwise.

Obligations of the United States Attorney's Office

  8. The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

Forfeiture

9. The Government may request that the Court, upon acceptance of the Defendant's guilty pleas, enter an order of forfeiture as part of his sentence, and that the order of forfeiture may include assets directly traceable to his offenses, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses. Specifically, the Court may order the forfeiture of:
    a. Any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from the offenses; and
    b. Any property, real or personal, used or intended to be used to commit or to promote the commission of the offenses.

Factual and Advisory Guidelines Stipulation

10. The Government would prove beyond a reasonable doubt at trial the factual allegations contained in Attachment A. The Government believes that the following applicable sentencing guidelines factors apply in this case:

   a. The applicable **base offense level is 18** pursuant to United States Sentencing Guidelines ("USSG.") § 2A6.2(a) – Stalking or Domestic Violence.

   b. The base offense level should be increased by 2 levels because the offense involved the threatened use of a dangerous weapon. USSG § 2A6.2(b)(1)(D).

   c. Pursuant to USSG §§ 2A6.1 application note 3 and 3D1.2(d), Counts 3-6 do not group with Count 2. The final combined offense level should be increased by 3 levels to account for Counts 3-6. Thus, **the adjusted offense level should be 23**.

   d. The Government does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of his plea and the date of sentencing; (vii) attempts to withdraw his pleas of guilty. **The final anticipated offense level is 20**.

6

There are no agreements, promises, undertakings, or understandings between the Defendant and the Government other than the facts set forth in Attachment A.

Very truly yours,

Kelly O. Hayes
United States Attorney

_____
Robert I. Goldaris
Patricia McLane
Assistant United States Attorneys

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

**OWEN JARBOE** ("**JARBOE**" or "the Defendant") is a 19-year old resident of Hagerstown, Maryland. **JARBOE** and others, including Conspirator 1 and Conspirator 2, created and operated an online group they called "Purgatory" via online messaging applications including Telegram and Instagram. **JARBOE's** user names and monikers included "Doxlistic," "Synthetics" and "yoboyqzippy."

**JARBOE** and others in Purgatory engaged in Swatting and Doxxing to strike out at perceived rivals, gain online notoriety, attempt to make money, and for their own enjoyment.

**JARBOE** and the Conspirators placed Swatting calls to police and other emergency departments where they would falsely report emergencies in the form of violent acts at particular locations. They did so to cause armed police responses to the locations with the intent to threaten, intimidate, and harass individuals and entities.

After **JARBOE** and the Conspirators in Purgatory Swatted or Doxxed their victims, they posted photographs, news reports and messages on a public facing Purgatory Telegram page to claim responsibility for their actions, brag about their prowess, and advertise their "swatting services."

On January 2, 2024, **JARBOE**, using a TextNow telephone number to mask his identity, called the Houston County, Alabama Sheriff's Office and threatened to burn down "Lot 2" in a residential trailer park located on US 84 in Cowarts, Alabama. On this call, **JARBOE** stated his name was VICTIM-1, that he had shot his son, and he threatened to kill any law enforcement

officers who arrived at the trailer park. As a result of **JARBOE**'s call, police rushed a SWAT response to the residential trailer park. Afterwards, a conspirator posted on the Purgatory Telegram channel links to news reports, a photograph of the law enforcement response to the swatting incident in Cowarts, Alabama, and the following message directed at Victim 1:

> zion we also had a little appearance by the men in camo get [expletive] you harmless freak thinking he could talk [expletive] without any consequences is appalling but makes our job a lot more fun when stuff like this happenes [sic] to our victims after they have a [sic] ego let's see him make a return in com PURGATORY FOREVER

**JARBOE** helped to plan and was present online on January 4, 2024, when Conspirator 1 used a Google Voice number to call the Newark, Delaware Police Department and falsely reported that he was inside the Newark High School classroom with others and heard a man firing shots in the school hallway. Moments after this first call ended, **JARBOE** called the department back and threatened to shoot Victim # 2, who was a teacher at Newark High School, and to kill unnamed students. As a result of this call, which occurred in the middle of a school day, the school was placed on lockdown and police officers responded to the scene.

**JARBOE**, using the moniker "synthetics," messaged Conspirator 2 in a Purgatory chat that "you saw what me wnd [sic] nightmare did to the school. Post it in telegram chat," to which Conspirator 2, using the moniker "bit coin," replied "yes." To brag about **JARBOE** and Conspirator 1's Swat of the school, a conspirator posted links to news reports of the swatting incident at the school in a public Purgatory Telegram channel.

On January 7, 2024, a conspirator posted in the Purgatory Chat: "LETS GET A HELL YEAH IF WE SHOULD SHUTDOWN A INTERNATINAL [sic] AIRPORT" to which **JARBOE**, using the moniker "synthetics," replied: "bet ill do it tmr."

9

On January 8, 2024, **JARBOE**, using a TextNow telephone number, called the Albany Police Department in Albany, New York and stated that he was going to go into the Albany International Airport to "shoot everybody up" and that his "friend" was going to set off bombs in the airport.  Police units then rushed to respond to these threats.  Later that day, **JARBOE**, using the moniker "synthetics," bragged in the Purgatory Chat "I just swatted a [sic] airport."

On January 15, 2024, **JARBOE**, using a TextNow telephone number, called Fire Station #2 in Eastman, Georgia, and claimed that he had shot his aunt and two juveniles and was considering shooting a third juvenile at an address on Fish Road in Eastman, Georgia. Police units then rushed to respond to these threats.

SO STIPULATED:

_____
Robert I. Goldaris
Assistant United States Attorney


_____
Owen Jarboe
Defendant


_____
Meghan S. Skelton, Esq.
Counsel for Defendant